IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 93-1851
Summary Calendar
_____

UNITED STATES OF AMERICA,                           Plaintiff-Appellee,

versus

MICHAEL DEANGELO DAVIS,                          Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(August 22, 1994)

Before SMITH, WIENER, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Defendant-Appellant Michael Deangelo Davis ("Davis") appeals
his convictions on four counts of Interference with Commerce by
Threats or Violence in violation of 18 U.S.C. § 1951 ("the Hobbs
Act") and two counts of Use of a Firearm During a Crime of Violence
in violation of 18 U.S.C. § 924(c). He asserts that the Government
failed to present sufficient evidence proving an established nexus
between his robberies of four gas stations and an ensuing effect on
interstate commerce. In addition, Davis challenges the district
court's upward departure based on the subsequent death of one of
the robbery victims. We affirm.

FACTS AND PROCEDURAL HISTORY

Davis was indicted on a total of six counts stemming from the
alleged robbery of four gas stations in Fort Worth, Texas on

December 10, 1992. Four of the counts were for obstruction of commerce by robbery, and two of the counts were for use of a firearm during the commission of a robbery.

Witnesses testified that all of the gas stations sold gas, beer, cigarettes and other goods which were manufactured out-of-state and distributed across state lines. The testimony also revealed that Davis used a handgun in at least two of the robberies. After he fled each of the gas stations he robbed, the stations had to be temporarily closed, thereby interrupting the stream of commerce. When Davis testified at the trial, he admitted robbing the stations, but denied using a handgun in any of them.

The jury convicted Davis on all six counts. The Presentence Investigation Report ("PSIR") concluded that Davis' conduct caused the death of Carolyn Overby ("Overby"), an employee working at the Lady Luck Fina station at the time Davis robbed it on December 10, 1992. According to the Assistant Medical Examiner for Tarrant County, Texas, the traumatic event of the robbery caused Overby to suffer a Berry aneurysm at the base of her brain, resulting in her death two days later.

Although Davis filed an objection to the PSIR's finding that his conduct caused Overby's death, at sentencing he failed to present any evidence to contradict that finding. Accordingly, the district court adopted the PSIR's finding that the robbery caused Overby's death as undisputed. The court also found that although Davis did not have the conscious intent to kill, his conduct was such that he should have anticipated that serious injury or death

2

could result. The court concluded that upward departure was authorized under § 5K2.1 of the Sentencing Guidelines, which provides for departure "[i]f death resulted." The court also concluded that an upward departure was warranted because without it Overby's death would not be taken into account by the Sentencing Guidelines.

The district court departed upward on the four obstruction of commerce counts by adding 60 months to the combined offense level under the Sentencing Guidelines, for a total of 157 months for each count running concurrently with one another. In addition, the court imposed a mandatory consecutive sentence of 60 months on one of the firearm counts and a mandatory consecutive sentence of 240 months on the second firearm count.

## DISCUSSION

Davis contends that the Government failed to show that his actions affected interstate commerce, notwithstanding the *de minimus* evidentiary standard used to establish the jurisdictional element under the Hobbs Act. Specifically, he argues that the mere presence of goods such as cigarettes and beer in the gas stations he robbed does not affect the flow of interstate commerce.

Davis failed to move for a judgment of acquittal at the close of evidence. Therefore, our review of the sufficiency of the evidence is limited to determining "whether affirmance of [Davis'] convictions would result in a manifest miscarriage of justice. This occurs only if the record is devoid of evidence pointing to guilt." *United States v. Pruenda-Gonzales*, 953 F.2d 190, 193-94

3

(5th Cir.), *cert. denied*, ___U.S.___, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992).

A valid conviction of a Hobbs Act violation by robbery requires the Government to prove that the defendant's conduct "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). However, the Government need only show that interstate commerce was obstructed, delayed, or affected "in any way or degree." *United States v. Wright*, 797 F.2d 245, 248-49 (5th Cir. 1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). In this case, Davis' robberies caused the interruption of commerce in all four gas stations dealing in out-of-state goods, resulting from their temporary closure. This evidence is sufficient to support a finding that Davis' robberies affected interstate commerce.[1]

Davis next challenges the district court's upward departure at sentencing under § 5K2.1 of the Sentencing Guidelines for Overby's death after the robbery.[2] He argues that the departure was not

_____

[1] See *United States v. Martinez*, ___F.3d___, WL 392671 (5th Cir. July 29, 1994) (temporary or permanent closing of business dealing in out-of-state wares sufficient interference with interstate commerce); *United States v. Richard*, 9 F.3d 120 (5th Cir. 1993) (unpublished opinion) (temporary closure of store following robbery sufficient interference with interstate commerce).

[2] Section 5K2.1 of the Sentencing Guidelines provides in pertinent part:

> If death resulted, the court may increase the sentence above the authorized guideline range...The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense

4

warranted because none of the § 5K2.1 factors apply to him and the consecutive sentences resulting from his two firearm convictions adequately accounted for the aggravated circumstances of his offenses.

The district court is given wide discretion to decide whether aggravating factors exist to support an upward departure. *United States v. Hatch*, 926 F.2d 387, 396-97 (5th Cir.), *cert. denied*, 500 U.S. 943, 112 S.Ct. 126, 116 L.Ed.2d 93 (1991).  A departure will be affirmed if the court offers "acceptable reasons for the departure and the departure is reasonable." *United States v. Velasquez-Mercado*, 872 F.2d 632, 635 (5th Cir.), *cert. denied*, 493 U.S. 866, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989).

A district court is not required to find that all of the § 5K2.1 factors exist in order to impose an upward departure. *United States v. Ihegworo*, 959 F.2d 26, 29 (5th Cir. 1992).  "The only 'mandatory' language in the section is that the judge 'must' consider matters that 'normally distinguish among levels of homicide,' such as state of mind." *Id.*  In this case, the court specifically stated that the mandatory factors were taken into account.  The court's conclusion that although Davis did not consciously intend to kill Overby his conduct was such that he should have anticipated that a serious injury or death could result from his conduct shows that relevant factors under § 5K2.1 were

---

of conviction...already reflects the risk of personal injury.

USSG § 5K2.1, p.s. (1993).

thoroughly considered.

In addition, we find that there is no merit to Davis' contention that the consecutive sentences he received for the firearm counts adequately took into account Overby's death. Davis was not charged with having used a firearm in the Lady Luck Fina station where Overby was robbed. Even if he had been convicted of using a firearm during that robbery, the Sentencing Guidelines and the firearm statue do not preclude an upward departure based on a resulting death.[3] Such an upward departure is specifically authorized by § 5K2.1. AFFIRM.

---

[3] See USSG § 2B3.1 and 18 U.S.C. § 924.