**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT WILLIAM MONTGOMERY,

    Defendant - Appellant.

No. 06-4300

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CR-00801-TS)**

Scott Keith Wilson, Assistant Federal Defender, Utah Federal Public Defender's Office (Steven B. Killpack, Utah Federal Public Defender, and D. Bruce Oliver of D. Bruce Oliver, LLC, of Salt Lake City, Utah, with him on the brief), for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the brief), District of Utah, for Plaintiff-Appellee.

Before **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Defendant-Appellant Robert William Montgomery pleaded guilty to one count of possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C § 922(g)(1).  The government appealed Mr. Montgomery's original sentence, and this Court reversed and remanded for resentencing.  *See United States v. Montgomery*, 439 F.3d 1260 (10th Cir. 2006).  On remand, Mr. Montgomery was resentenced to an identical prison term.  Mr. Montgomery appeals this sentence claiming that the district court erred in applying an upward departure under United States Sentencing Guidelines Manual ("U.S.S.G.") § 5K2.1.[1]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §

---

[1]     Two issues relating to the appropriateness of our decision to hear the merits of Mr. Montgomery's appeal bear mention, but they may be disposed of in summary fashion.  First, Mr. Montgomery originally appealed the sentence on grounds that the district court allowed perjured testimony by a government witness during his sentencing and failed to hold the witness in contempt.  In its answer brief, the government challenged Mr. Montgomery's standing to raise this contempt issue, and he conceded the point in his reply brief.  In that same brief, however, Mr. Montgomery for the first time raised the contention of error related to the § 5K2.1 departure.  *See* Aplt. Reply Br. at 1-14.  Although the failure to raise an argument in an opening brief generally constitutes a waiver, *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), the government had the opportunity to respond to the upward departure argument in a surreply and availed itself of it, and Mr. Montgomery replied to that surreply.  Thus, as the issue has been briefed fully and argued by the parties, we exercise our discretion to ignore the waiver and address this "strictly legal question the proper resolution of which is beyond doubt." *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999) (internal quotation marks omitted).  Second, Mr. Montgomery's counsel appropriately alerted us to the fact that Mr. Montgomery "will likely have completed his prison term before this Court can act on his appeal."  Aplt. Reply Br. at 1 n.1.  However, his counsel took the position that Mr. Montgomery's appeal would not be rendered moot by Mr. Montgomery's release from prison

(continued...)

-2-

3742, we affirm.

## I. Background

The charges against Mr. Montgomery arose from an investigation into the suicide of his wife, Nicole Cottam-Montgomery, which revealed that she had used a firearm unlawfully possessed by Mr. Montgomery to kill herself. The revised presentence report ("PSR") calculated the total offense level as 19 and Mr. Montgomery's criminal history category as IV, resulting in a Guidelines range of 46 to 57 months.

---

[1](...continued)
because "[a] remand for resentencing could affect Mr. Montgomery's unexpired term of supervised release." *Id.* The government does not challenge Mr. Montgomery's position on whether this appeal is moot. Nevertheless, "[b]efore addressing the merits of an appeal, a court must be satisfied that it has jurisdiction to entertain the appeal." *United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007). Our review of publicly accessible Bureau of Prisons records suggests that Mr. Montgomery was released from prison on or about December 14, 2007. *See* Federal Bureau of Prisons, Inmate Locator, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Dec. 10, 2008). We need not definitively opine on this factual issue, however. Assuming that Mr. Montgomery has been released, as his counsel predicted, we conclude that his sentencing appeal is not moot because Mr. Montgomery's unexpired term of supervised release potentially could be reduced if we were to render a ruling favorable to him on his upward departure challenge. *See Vera-Flores*, 496 F.3d at 1180 ("A defendant in this situation [who is "still serving a term of supervised release"] satisfies the Article III case or controversy requirement because the defendant's liberty is affected by ongoing obligations to comply with supervised release conditions and restrictions."); *see also United States v. Westover*, 435 F.3d 1273, 1277 (10th Cir. 2006) (noting that "practical impact" that resentencing would "potentially shorten[] the [unexpired] term [of supervised release]" was "sufficient to prevent this appeal from being moot").

After Mr. Montgomery pleaded guilty, the government moved for a four-level upward departure under U.S.S.G. § 5K2.1[2] because the death of Mr. Montgomery's wife resulted from his  unlawful possession of firearms.  Mr. Montgomery filed an objection to the upward departure.  The district court then conducted a hearing on the government's motion, at which several witnesses testified.  The district court granted the government's motion, but it imposed only a two-level upward departure under § 5K2.1.  The district court found that Mr. Montgomery contributed to his wife's suicide by "engag[ing] in a pattern of escalating violence toward [her]"; by threatening to take their son away from her; and by "attempt[ing] to thwart [her] efforts to receive treatment for her apparent depression."  Aplt. App. at 22-23.  And the court found it significant that Mr. Montgomery was aware that "his wife attempted suicide, just three weeks before" her death.  *Id.* at 22.  The district court concluded that the upward departure was justified because the facts and circumstances placed the case "squarely outside of the 'heartland' of typical cases involving a felon in possession of a firearm."  *Id.* at 24.

Two days later, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004).  In light of *Blakely*, Mr. Montgomery moved for reconsideration

---

[2]     Although the government's motion was filed in 2004, the challenged application of § 5K2.1 by the district court did not take place until 2006, so we refer to the 2006 version of the Guidelines.

of the district court's decision to grant an upward departure. Upon reconsideration but before Mr. Montgomery had been sentenced, the district court vacated its upward departure order and decided to "continue to apply the sentencing guidelines, but without additional fact-finding by the Court that might result in an upward enhancement or departure that would result in a sentence above that which would otherwise apply under the guidelines, absent those findings." Aplee. App. at 77. The district court specifically noted that the facts regarding the resultant death of Ms. Cottam-Montgomery were found improperly and must be vacated. The district court soon thereafter sentenced Mr. Montgomery to 57 months, the top of the Guidelines range without the two-level upward departure, to be followed by 36 months of supervised release.

The government appealed the district court's decision to vacate the upward departure, and this Court reversed and remanded. We held that the district court had committed nonconstitutional error under *United States v. Booker*, 543 U.S. 220 (2005), by treating the Guidelines, at least in part, as mandatory and that the error was not harmless because "[t]he record clearly indicates the district court would have imposed a higher sentence if it believed it had the discretion to do so." *Montgomery*, 439 F.3d at 1262-63.

Upon resentencing, the district court departed upward two levels pursuant to § 5K2.1, which resulted in a total offense level of 21 and a Guidelines range of 57 to 71 months. Relying on the reasoning, legal authority, and factual basis set

forth in its previous order granting upward departure, the district court then reimposed its sentence of 57 months' imprisonment—now at the bottom, rather than the top, of the Guidelines range—to be followed by 36 months of supervised release. Mr. Montgomery appeals.

## II. Discussion

*A. Standard of Review*

Mr. Montgomery disputes whether the district court's reliance on his wife's suicide was a permissible departure factor under § 5K2.1. Section 5K2.1 provides:

**<u>Death</u> (Policy Statement)**

If death resulted, the court may increase the sentence above the authorized guideline range.

Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

After *Booker*, this Court reviews sentences for reasonableness, as informed

by the 18 U.S.C. § 3553(a) sentencing factors. *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *United States v. Munoz-Tello*, 531 F.3d 1174, 1181 (10th Cir. 2008), *petition for cert. filed*, No. 08-6953 (U.S. Oct. 20, 2008). The Supreme Court has clarified that we apply a deferential abuse of discretion standard within this reasonableness review, and that this standard applies whether the sentence imposed is inside or outside the Guidelines range. *Gall*, 128 S. Ct. at 597. "When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions *de novo* and factual findings for clear error, giving due deference to the district court's application of the [G]uidelines to the facts." *Munoz-Tello*, 531 F.3d at 1181 (internal quotation marks omitted).

When a defendant challenges a district court's upward departure, we review pursuant to a four-part test:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable. Although we apply a "unitary abuse of discretion standard" to these four prongs, we have specified that the degree of deference to the district court varies depending on the essential nature of the question presented [on appeal.] That is, if the question on appeal has the hue of a factual question, we accord the district court greater deference, whereas we undertake plenary review of questions that are in essence legal.

*Id.* at 1186 (citations and internal quotation marks omitted) (quoting *United States*

-7-

*v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006) (noting that this unitary standard involves review to determine whether the district court's discretion was guided by erroneous legal conclusions and that whether a factor is a permissible ground for departure is a legal conclusion)).

*B. Upward Departure Under U.S.S.G. § 5K2.1*

   *1. Scope of Policy Statement*

   Mr. Montgomery contends that the plain language of § 5K2.1 restricted the district court to granting an upward departure only when the "death resulted" from a homicide.  Alternatively, he asserts that even if § 5K2.1 is not limited to homicide deaths, it cannot be extended to include a death that occurs as the result of suicide.

   We reject this argument, as did the district court.  The plain language of § 5K2.1 provides for an upward departure "[i]f death resulted."  There is no indication that § 5K2.1 limits the word "death" to mean only deaths due to homicide.  The policy statement contains no explicit reference to suicide, nor does the language of § 5K2.1 require that the victim be killed by the defendant or by anyone else.[3]  While the provision does instruct that "the sentencing judge

---

   [3]   *Cf.* Jessie K. Liu, *Victimhood*, 71 Mo. L. Rev. 115, 145 (2006) (tacitly recognizing that § 5K2.1 is not readily amenable to a cramped view of its scope, in noting that although "the Guidelines specify that departures may be warranted where death or physical injury 'resulted,'" they "do not explicitly state whether the person killed [or] injured . . . must have been a victim of the crime").

must give consideration to matters that would normally distinguish among levels of homicide," this directive is included within the context of a broad range of factors that are listed to guide the court regarding both the propriety of a departure and the extent of any departure that is granted. U.S.S.G. § 5K2.1. The reference to "homicide" does not denote that the provision is limited to cases involving homicide; rather, it indicates that the same factors that determine an offender's culpability in homicide cases—such as "state of mind and the degree of planning or preparation"—must be considered by the district court and may be relevant alongside factors such as "whether multiple deaths resulted" or "the means by which life was taken" in determining whether an upward departure is warranted under § 5K2.1. Although this Court is unaware of another case in which § 5K2.1 was the basis for an upward departure when the death undisputedly resulted from suicide, the plain language of § 5K2.1 does not restrict its application solely to deaths by homicide.

Moreover, Mr. Montgomery's narrow reading of § 5K2.1 is belied by the courts' application of it in various contexts. Upward departures under § 5K2.1 have been sanctioned in cases where the death resulted from criminal conduct that could not be clearly deemed to have effected a homicide.

In *United States v. Purchess*, for example, a drug courier or "mule" voluntarily swallowed drugs packaged into pellet form, intending to sell the drugs for his own profit. 107 F.3d 1261, 1263 (7th Cir. 1997). When one or more

pellets burst in his stomach he denied that he was ferrying drugs, refused medical treatment, and died of a drug overdose. *Id.* at 1263-64. The defendant, an illegal drug importer, argued that the courier caused his own death. The defendant did not force the courier to swallow the drugs, to deny that he had done so, or to refuse medical treatment. *Id.* at 1263-64, 1270.

Nevertheless, the Seventh Circuit upheld an upward departure under § 5K2.1, concluding that the defendant knowingly risked the courier's death and that the death resulted from the unusually dangerous circumstances arising from the manner in which the drugs were packaged when bought from the defendant. *Id.* at 1270-72; *see United States v. Ihegworo*, 959 F.2d 26, 29-30 (5th Cir. 1992) (affirming § 5K2.1 departure when a drug user "died from ingesting the extraordinarily pure heroin" that the defendant was convicted of possessing with intent to distribute); *see also United States v. Davis*, 30 F.3d 613, 615-16 (5th Cir. 1994) (affirming an upward departure under § 5K2.1 where the traumatic event of a robbery caused a gas station attendant to suffer a fatal brain aneurysm); *cf. United States v. Pacheco*, 489 F.3d 40, 46-48 (1st Cir. 2007) (analogizing § 5K2.1 language and precedent to § 5K2.2 and upholding departure where victim's "significant physical injury resulted" from a polydrug overdose, and he had purchased one of the drugs from defendant).

*2. Application of § 5K2.1*

Mr. Montgomery additionally asserts that an upward departure is improper

because his wife's death did not result from his crime of conviction. This argument rests on two connected contentions: first, that there is an insufficient relationship between Mr. Montgomery's offense of being an unlawful felon in possession of a firearm and Ms. Cottam-Montgomery's suicide; and second, that the basis for the district court's upward departure was Mr. Montgomery's behavior toward his wife, which he asserts is unrelated to the crime of conviction.

The touchstone of the inquiry is whether it was reasonably foreseeable to Mr. Montgomery that his criminal conduct could result in his wife's death. *United States v. Fortier*, 242 F.3d 1224, 1232-33 (10th Cir. 2001), *superseded by statute on other grounds*, PROTECT Act of 2003, Pub. L. No. 108-21, 117 Stat. 650, 670-71. In *Fortier*, this Court affirmed the district court's upward departure under § 5K2.1 for deaths that were the product of the Oklahoma City bombing, which were a reasonably foreseeable consequence of, although not directly caused by, the defendant's conduct. The defendant pleaded guilty to conspiring to transport and transporting stolen firearms, making a false statement to the F.B.I., and misprision of a felony. *Id.* at 1226. On appeal, he argued that there was an insufficient nexus between the Oklahoma City bombing and his admitted wrongdoing to permit an upward departure.

We rejected that argument. Initially, we observed that there was "colorable argument" that defendant's "conduct bordered on recklessness" (i.e., involved actual awareness of a risk and a decision to disregard it). *Id.* at 1232. But we

-11-

concluded that irrespective of whether his conduct was reckless, defendant bore

"sufficient legal responsibility for the bombing to support an upward departure."

*Id.* at 1232.

> Several of the Guidelines relied upon by the district court for the upward departure permit an increased sentence where the specified harm "resulted" from the defendant's conduct. *We have interpreted the words "resulted from" in the Guidelines as permitting an increased sentence for harms that were a "reasonably foreseeable" consequence of a defendant's conduct even where a defendant did not directly cause the specified harm.* Fortier well knew-in great detail-McVeigh's and Nichols's plans to bomb the Murrah Building. Fortier also knew the guns he sold for McVeigh and Nichols were stolen as a "fund-raiser" to offset expenses related to the bombing. Although the government cannot directly trace any of the proceeds from Fortier's criminal activity, a reasonably foreseeable consequence of giving McVeigh and Nichols $2000 of the proceeds was to further the Oklahoma City bombing conspiracy.

*Fortier*, 242 F.3d at 1232-33 (emphasis added) (citations and internal quotation

marks omitted). Because the defendant "should have known his sale of firearms had

the capacity to further the bombing of the Murrah Federal Building (an offense he

knew for certain would result in many deaths)," this Court affirmed the upward

departure. *Id.* at 1232 (internal quotation marks omitted).

Here, as in *Fortier*, the district court's upward departure is supported by Mr.

Montgomery's knowledge of the possible consequences of his unlawful actions. Mr.

Montgomery's unlawful possession of firearms was a "link[] in the chain of events

leading up to" his wife's suicide. *See id.* at 1233 n.5. As stated by the district court,

"this is not simply a case of a felon in possession of a firearm whose wife committed suicide using his illegal weapon." Aplt. App. at 22. Rather, aggravating factors and circumstances made the ultimate consequence of Mr. Montgomery's behavior—his wife's death—reasonably foreseeable as resulting from his unlawful behavior.

Specifically, Mr. Montgomery's escalating emotional and physical abuse of his wife, his knowledge of her previous suicide attempt only three weeks prior to her death, his reported attempt to prevent her from taking prescribed antidepressants, and his threat to take their son away from Ms. Montgomery, all indicate that her suicide by his weapon was reasonably foreseeable to Mr. Montgomery.

As noted by the district court, whether other individuals foresaw Ms. Cottam-Montgomery's act is not the pertinent issue. Mr. Montgomery's "conduct was such that he should have anticipated that a serious injury or death could result from his conduct." *See Davis*, 30 F.3d at 616. While Mr. Montgomery may not have known his wife's plans "in great detail," as did the defendant in *Fortier*, Mr. Montgomery, by way of his superior knowledge and unique perspective, reasonably could have foreseen that his unlawful actions could result in his wife's death.

Mr. Montgomery cites *Fortier* and appears to argue that unless he had actual knowledge that his wife would commit suicide with one of the illegal firearms, the suicide was not reasonably foreseeable to him. However, *Fortier*'s rationale itself—which expressly did not turn on whether the defendant "was actually aware of the risk but chose instead to ignore it," 242 F.3d at 1232—renders this contention

-13-

untenable.

Furthermore, Mr. Montgomery's actual-knowledge contention is at odds with other Tenth Circuit case law and the law in other circuits. In *United States v. Metzger*, 233 F.3d 1226 (10th Cir. 2000), this Court reviewed an enhancement of a robbery sentence pursuant to U.S.S.G. § 2B3.1(b)(3)(B) for causing serious bodily injury to a victim. After robbing the teller at a credit union, the defendant exited the bank and left the scene on a bicycle. *Id.* at 1227. A uniformed officer who had been transacting business at the bank was told that the perpetrator was in a blue vehicle in the parking lot. The officer saw a blue car in the parking lot and shot the driver, an innocent bystander, as she attempted to drive away. *Id.* We upheld the district court's enhancement of the sentence under § 2B3.1(b)(3)(B) due to the driver's injury. We concluded that the defendant was responsible for the harm which "resulted from" his acts and, as with § 5K2.1 in *Fortier*, "resulted from" means "harms that were a 'reasonably foreseeable' consequence of a defendant's conduct." *Id.*

In *Metzger*, the relevant question was not whether the defendant "could have expected events to unfold in precisely the way they did." *Id.* Instead, we examined whether it was reasonably foreseeable, given the inherently dangerous nature of a bank robbery, that a bystander might be seriously injured during the flight or apprehension of the perpetrator. *Id.* at 1227-28. Likewise in this case, given the inherently dangerous nature of Mr. Montgomery's actions regarding his wife, it was

-14-

reasonably foreseeable that his unlawful possession of firearms could result in Ms. Cottam-Montgomery's death.

Some other circuits have adopted a similar view to the one we articulated in *Metzger.  See United States v. Diaz*, 285 F.3d 92, 100-01 (1st Cir. 2002) (determining that defendant brandishing a firearm at a crowd of bystanders, prompting police to shoot a plainclothes officer who refused to drop his weapon, was an indirect cause of the officer's death and within the scope of § 5K2.1, as "[u]nintended consequences are often the result of reckless behavior, and while [appellant] could not have anticipated the particular sequence of events, appellant should have foreseen the possibility of serious harm"); *see also United States v. Scheetz*, 293 F.3d 175, 189-92 (4th Cir. 2002) (affirming a § 5K2.1 departure and noting that although the armed defendant who accompanied codefendants to collect a debt was not a direct cause of an unrelated third party's death and perhaps "could not have anticipated the particular sequence of events," he "should have foreseen the possibility of serious physical harm to another as a result of his actions"); *cf. United States v. Cardena-Garcia*, 362 F.3d 663, 665-66 (10th Cir. 2004) ("Resulting in death and causing death are not equivalent[]. . . . A sufficient nexus would exist [under § 2L1.1(b)(6), which requires an enhancement if death resulted] if the death or injury was reasonably foreseeable and [the defendants'] conduct was a

contributing factor.").[4]  Accordingly, we conclude that Mr. Montgomery's actual-knowledge contention is without merit.

Mr. Montgomery relies on *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007), to support his argument that the district court improperly relied on conduct unrelated to the underlying offense in applying the upward departure.  In *Allen*, this Court noted that "when a § 5K2.0 departure is based on acts of misconduct not resulting in conviction those acts must still relate meaningfully to the offense of conviction."  488 F.3d at 1257 (internal quotation marks omitted).

In *Allen*, however, we held that a departure under the provision was unavailable because the district court attempted to base an increased sentence for a drug conviction on entirely non-drug related conduct.  *Id.*  Unlike in *Allen*, and contrary to Mr. Montgomery's claims, here the district court granted an upward

---

[4]    Commenting "in passing" in a case involving an upward departure under the analogous Guidelines provision relating to conduct resulting in significant physical injuries, the First Circuit observed:

> [T]he defendant here engaged in the commercial trade of potent substances [i.e., the animal tranquillizer, ketamine] that he must have known could have dire consequences in a myriad of circumstances. . . . Consequently, while he could not have anticipated the exact sequence of events that unfolded here, he could (and should) have foreseen the possibility of the kind of serious harm that in fact occurred.

*Pacheco*, 489 F.3d at 48 n.5.  As noted in text, similar comments apply with full force to Mr. Montgomery.

departure based on the offense conduct itself and not on account of Mr. Montgomery's treatment of his wife. Rather, the district court found that Mr. Montgomery's abuse, knowledge of her previous suicide attempt, threat to take away their son from her, and other "aggravating factors and circumstances" created, in their totality, an inherently dangerous situation rendering it reasonably foreseeable to Mr. Montgomery "that Ms. Cottam-Montgomery might suffer serious injury or death *as a result of his illegal possession of weapons in his home.*" Aplt. App. at 22-23 (emphasis added).

Therefore, the upward departure was not based on Mr. Montgomery's conduct toward his spouse; it was based upon a determination that Mr. Montgomery's illegal possession of firearms was a link in the chain of events which resulted in his wife's death. *See Fortier*, 242 F.3d at 1233 n.5; *Metzger*, 233 F.3d at 1227-28. These undisputed "aggravating factors," coupled with Mr. Montgomery's action in possessing firearms under the circumstances, made it reasonably foreseeable to him that such harm could result.

### III. Conclusion

Because under the specific circumstances of this case, the district court did not err in deciding that Ms. Cottam-Montgomery's suicide resulted from Mr. Montgomery's unlawful possession of firearms, we hold that its upward departure under U.S.S.G. § 5K2.1 was permissible. Accordingly, we **AFFIRM** the court's sentence.

-17-