# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2985

_____

United States of America

*Plaintiff - Appellee*

v.

Emmanuel Chaplain

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 12, 2017
Filed: July 21, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Emmanuel Chaplain was convicted of seven counts of interfering with commerce by means of robbery (Hobbs Act robbery) in violation of 18 U.S.C. § 1951, three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and (C), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and sentenced to 852

months' imprisonment. He appeals, challenging the sufficiency of the evidence and the district court's[1] jury instruction for Hobbs Act robbery. For the reasons discussed below, we affirm.

## I. BACKGROUND

Chaplain and Shane Seizys were involved in a spree of robberies in Omaha from June 19, 2014, until July 16, 2014, when they were arrested. During six of the eight violent robberies, both Chaplain and Seizys were wearing electric-monitoring ankle bracelets that tracked their location within 15 meters of each robbery location. Fifteen meters is the range of accuracy for the GPS unit. On June 19, 2014, Thomas Jones-Ross drove Chaplain and Seizys to a Jiffy Lube and parked several blocks away. Chaplain and Seizys entered the business with handguns and wore bandanas covering their faces. One man put a gun to the manager's face and ordered him to open the cash register while the other had a gun pointed at a customer. The manager gave them $850. They demanded that he open the safe, which was empty. The customer in the business at the time of the robbery described the robbers as two African-American males. The ankle bracelets assigned to Chaplain and Seizys placed them within 15 meters of the Jiffy Lube at the time of the robbery. Jiffy Lube, a nationwide franchise that receives its products from Pennsylvania, had to close for 90 minutes due to the police investigation.

Jones-Ross then drove Chaplain and Seizys to Jensen Tire & Auto. They arrived a little before 6 p.m., after the store had closed and the cash had been deposited into a safe. Chaplain and Seizys entered the business with bandanas over their faces, put a gun to an employee's face, and asked about the safe. When the employee stated that he did not know where the safe was, Chaplain and Seizys

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

confronted the manager. The manager opened the cash registers, but they were empty. They took the manager to his office and told him that they would shoot him if he did not give them the money from the safe. The manager was unable to open the safe. Both Chaplain's and Seizys's ankle bracelets placed them within 15 meters of the Jensen Tire & Auto at the time of the attempted robbery. Jones-Ross next drove Chaplain and Seizys to another Jiffy Lube. They entered the business with their faces covered, one by a bandana and the other by an "Airsoft" mask, and brandished a gun. They put the gun to the back of an employee's head and ordered the employee to open the cash register. They took $220 from the register. The safe was empty. The business was closed for the rest of the day, and the customers at the business at the time of the robbery were not charged for the services they received. Chaplain's and Seizys's ankle bracelets placed them within 15 meters of the Jiffy Lube at the time of the robbery.

On June 23, 2014, Jones-Ross again acted as the getaway driver, driving his mother's vehicle, for Chaplain and Seizys to commit three more robberies. Like the previous three robberies, Chaplain and Seizys had guns and used bandanas and masks to cover their faces. At 6 p.m. Chaplain and Seizys entered a Subway restaurant where twelve customers were dining, brandished their guns, and ordered everyone to get on the ground. One of them demanded that an employee open the cash register and safe while the other kept his gun pointed at another employee. They grabbed between $400 and $500 at this location. The restaurant was closed for the remainder of the evening, losing six operating hours. The robbery was captured on surveillance video, and both Chaplain's and Seizys's ankle bracelets placed them within 15 meters of the Subway restaurant at the time of the robbery.

Jones-Ross then drove Chaplain and Seizys to an O'Reilly Auto Parts store. As Chaplain and Seizys entered the store with their guns drawn, a customer was exiting the store. A customer inside the store stated that one robber wore a blue "NAVY" hoodie and a blue bandana. Chaplain and Seizys took between $100 and $150 from

-3-

the cash register. Because the safe was on a time release, it could not be opened. Inventory for O'Reilly Auto Parts comes from distribution centers in Iowa, Missouri, and Minnesota. It receives daily shipments from Iowa. The store was closed for a short period of time during the police investigation but reopened that evening for an hour. Again, ankle bracelets assigned to Chaplain and Seizys placed them within 15 meters of the store at the time of the robbery.

From O'Reilly Auto Parts, Jones-Ross drove Chaplain and Seizys to a Kum & Go gas and convenience store. Chaplain and Seizys entered the store with guns drawn and their faces concealed with bandanas. One robber forced the clerk to open the cash registers while the other stood by the front door. They took $800 from the registers and demanded that the employees open the safe, but neither employee had the combination. The convenience store was closed for nearly two hours during the police investigation. A customer who was purchasing gas at the time of the robbery saw two men with bandanas over their faces enter the Kum & Go with guns. The customer left the store and noticed Jones-Ross's vehicle parked nearby. He reported the vehicle's license plate number to the police. Jones-Ross's vehicle stalled shortly after Chaplain and Seizys returned from the Kum & Go. All three men fled from the vehicle. The ankle bracelets placed Chaplain and Seizys within 15 meters of the Kum & Go at the time of the robbery and within 15 meters of the abandoned vehicle.

Omaha police were called to the scene of the abandoned vehicle. It had a fictitious license plate taped over the front license plate. The fictitious plate was the same as the license place number called in after the Kum & Go robbery. Police found $31, coins, duct tape, a black bandana, black cloth gloves, a blue sweatshirt, a black face mask, and a box of latex or vinyl gloves. DNA was extracted from the black bandana and analyzed at the Nebraska State Patrol crime laboratory. Chaplain was the main contributor of DNA to the bandana. The blue sweatshirt in the car had the word "NAVY" on it, which matched the description given by the customer at O'Reilly

Auto Parts and matched the sweatshirt seen in the Subway and Kum & Go robberies. Jones-Ross's girlfriend identified the sweatshirt as belonging to Seizys.

On July 8, 2014, the Nebraska State Department of Corrections received notice that Chaplain had removed his ankle bracelet. He was placed on abscond status, and a warrant was issued for his arrest. On July 16, 2014, three men entered GameStop carrying a yellow and black bag and wearing hoodies with the hoods pulled over their heads, bandanas covering their faces, and gloves. The men ordered the clerk to open the registers and safe. She opened the registers, but the safe was on a ten-minute delay. The men held a customer at gunpoint and told him to empty his pockets. The men escaped with approximately $1,400 to $1,500, and as they were leaving the store, the last robber took Xbox One game cases from the display wall. The store surveillance camera captured the robbery. The store was closed for the remainder of the evening, losing three hours of business.

Less than 30 minutes later, two men wearing bandanas entered a Kentucky Fried Chicken (KFC) restaurant and demanded money. Employees emptied the registers. The two men took the money, ran between two houses, and met at a white Ford Mustang parked on the street. A witness saw three men at the trunk of a white Mustang changing clothes. KFC lost three hours of business as a result of the robbery. Inventory for the restaurant is shipped from Kansas City to Omaha twice a week. Officers arrived at the KFC shortly thereafter and searched the area. Police found three black males matching the description of the suspects walking together. Chaplain ran as the police car approached. Dilang Dat and Seizys were taken into custody. Dat had over $200 and the key to the white Mustang in his pocket. Seizys had approximately $240 in his pocket. Chaplain was later apprehended. Officers took Chaplain, Seizys, and Dat to a KFC parking lot. The GameStop clerk identified Chaplain by his voice and skin tone. A KFC customer also identified Chaplain by his voice. Police inventoried the white Mustang and found the following: a fictitious rear license plate, multiple Xbox One game display cases, a red bandana, a black and

-5-

white bandana, Seizys's learner's permit, nylon or latex gloves, a nylon holster, and a yellow and black bag matching the description of the bag used in the GameStop robbery. Chaplain's fingerprints were on the Xbox One game display cases, and the bag contained $150.

Chaplain, along with Seizys, Dat, and Jones-Ross, were indicted by a grand jury sitting in Nebraska. Chaplain was charged with eight counts of interfering with commerce by means of robbery, four counts of brandishing a firearm during a crime of violence, and one count of being a felon in possession of a firearm. Seizys, Dat, and Jones-Ross all entered guilty pleas pursuant to plea agreements. Chaplain pled not guilty and went to trial on March 14, 2016. At the conclusion of the government's evidence, Chaplain moved for acquittal. The court denied the motion, and the jury convicted Chaplain of seven Hobbs Act robberies, three counts of brandishing a firearm, and one count of felon in possession of a firearm. The jury acquitted Chaplain of Hobbs Act robbery for the Jensen Tire & Auto incident and thus, was instructed it need not address the brandishing charge related to that robbery. Chaplain was sentenced to 168 months' imprisonment for each of his Hobbs Act robberies to run concurrently and 120 months' imprisonment for his felon in possession of a firearm conviction to run concurrently, along with consecutive sentences of 7 years, 25 years, and 25 years for each of the brandishing charges, for a total of 852 months' imprisonment. Chaplain appeals, challenging the sufficiency of the evidence and the jury instruction for the Hobbs Act robberies.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Chaplain argues that the evidence presented at trial was insufficient to support his convictions beyond a reasonable doubt. Our standard of review for a challenge to the sufficiency of the evidence and a denial of a motion for a judgment of acquittal

is the same, de novo.  United States v. Adejumo, 772 F.3d 513, 522 (8th Cir. 2014). We view the evidence "in a light most favorable to the verdict and accept[] all reasonable inferences supporting the verdict."  United States v. Bell, 761 F.3d 900, 906 (8th Cir. 2014) (quoting United States v. Colton, 742 F.3d 345, 348 (8th Cir. 2014) (per curiam)).  "[W]e reverse 'only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'"  United States v. Morales, 445 F.3d 1081, 1084 (8th Cir. 2006) (quoting United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005)).

### 1.    Hobbs Act Robberies

A person commits a Hobbs Act robbery if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do."  18 U.S.C. § 1951(a).  GPS tracking through Chaplain's ankle bracelet, eye witness testimony, physical evidence, and video surveillance provide overwhelming evidence to establish Chaplain's involvement in each robbery, and Chaplain does not explicitly contest this evidence.  Chaplain argues only that the government failed to show that the robberies affected interstate commerce.  We disagree.

"Commerce" is defined as

> commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commence between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Id. § 1951(b)(3).  Commerce has been defined very broadly in caselaw.  The statute "in no way exclude[s] prosecutions for . . . local robberies, so long as they satisfy the requirement that commerce or the movement of any article or commodity in

commerce is obstructed, delayed, or affected." United States v. Farmer, 73 F.3d 836, 843 (8th Cir. 1996). "When a business that sells goods manufactured outside the state is robbed, interstate commerce is usually sufficiently affected for" Hobbs Act robbery. United States v. Quigley, 53 F.3d 909, 910 (8th Cir. 1995). Where a business is forced to close for a period of time, a court is especially likely to find that the robbery affected interstate commerce. United States v. Mann, 701 F.3d 274, 295 (8th Cir. 2012). In United States v. Davis, 30 F.3d 613 (5th Cir. 1994), the court held that the evidence was sufficient to support a finding of Hobbs Act robbery where the "robberies caused the interruption of commerce in all four gas stations dealing in out-of-state goods, resulting from their temporary closure." Id. at 615. The commerce element is also satisfied "when a robbery depletes the assets of a business engaged in interstate commerce." United States v. House, 825 F.3d 381, 386 (8th Cir. 2016), cert. denied, 137 S. Ct. 1124 (2017). Even the robbery or attempted robbery of a drug dealer of drugs or drug proceeds satisfies the commerce element of Hobbs Act robbery. Taylor v. United States, 136 S. Ct. 2074, 2077-78 (2016).

Here, every business involved in Chaplain's robbery spree was forced to close temporarily. The first Jiffy Lube was closed for 90 minutes, the second Jiffy Lube was closed for the remainder of the day, Subway was closed for the remainder of the day and lost six hours of business, O'Reilly Auto Parts was forced to close for a period of time, Kum & Go was closed for nearly two hours, GameStop was closed for the remainder of the evening and lost three hours of business, and KFC was forced to close three hours early. Moreover, each business sold out-of-state goods. Jiffy Lube is a franchise that receives products from warehouses in Pennsylvania. Subway is a chain restaurant that belongs to a larger interstate chain of stores. O'Reilly Auto Parts receives inventory from Iowa, Missouri, and Minnesota. Kum & Go has stores in both Nebraska and Iowa. GameStop is a national chain that receives products from across the country. KFC is part of a national chain of restaurants that receives its food from Kansas. Thus, there is sufficient evidence to demonstrate that Chaplain's

-8-

actions obstructed, delayed, or affected commerce in some way or to some degree such that Chaplain's convictions under the Hobbs Act were appropriate.

### 2.     Firearms Charges

Chaplain was convicted of three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and (C). He states that there was insufficient evidence to support these convictions but fails to explain this argument in his brief on appeal. "Because the brief does not support this assertion with any argument, this court deems the issue abandoned." United States v. Aldridge, 561 F.3d 759, 765 (8th Cir. 2009).

### B.     Jury Instructions

Chaplain also argues that the district court erred by failing to put the word "interstate" before the word "commerce" in its jury instructions for the Hobbs Act charges. We review the district court's jury instructions for an abuse of discretion. United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). Here, again, Chaplain has abandoned this issue. Although Chaplain mentions the district court's alleged jury instruction error in his Statement of Issues in his brief, he never actually argues this point. Federal Rule of Appellate Procedure 28(a)(8)(A) requires that the argument in the brief set forth the "appellant's contentions and the reasons for them." If "the brief does not support [the party's] assertion with any argument, this court deems the issue abandoned." Aldridge, 561 F.3d at 765.

## III.  CONCLUSION

The judgment of the district court is affirmed.[2]

_____

_____

[2]The court did not consider Chaplain's two pro se documents since he was represented by counsel.  <u>United States v. Jones</u>, 698 F.3d 1048, 1051-52 (8th Cir. 2012).