**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FEDEL VERA-FLORES,

Defendant-Appellant.

No. 06-1128

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 05-CR-465-MSK)**

---

Vicki Mandell-King, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (Troy A. Eid, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **MURPHY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.  Introduction

Defendant-Appellant Fedel Vera-Flores pleaded guilty to one count of possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A).  He received a sentence of twelve months and one day, to be followed by three years' supervised release.  On appeal, Vera-Flores alleges the United States breached its obligation under the plea agreement not to oppose a below-Guideline sentence.  He also challenges the sentence imposed by the district court.

During the pendency of Vera-Flores' appeal, this court learned Vera-Flores, a citizen of Mexico who was in the United States illegally at the time of his arrest, had served his term of imprisonment and been deported.  Because this court determines Vera-Flores' removal from the United States moots his appeal, we do not have jurisdiction to consider the merits of this appeal.

## II.  Background

Vera-Flores claims he entered the United States illegally in June 2005 to work and visit his son and grandson in Grand Junction, Colorado.  Vera-Flores' arrest resulted from an October 14, 2005, Drug Enforcement Agency search of his son's home in connection with the son's suspected illegal drug activity.[1]  During

_____

[1] It is undisputed that the suspected illegal drug activity did not involve or implicate Vera-Flores.

the search, federal agents discovered a semi-automatic handgun in the bedroom occupied by Vera-Flores.

Vera-Flores was apprehended by police officers during his evening drive home from work on October 14 and waived his *Miranda* rights. When questioned about the handgun, Vera-Flores admitted he had purchased the gun during his stay in Grand Junction. He admitted he knew he could not legally purchase or register a gun and also acknowledged he had been aware of the risk that the gun was stolen. Three days after Vera-Flores' arrest, the Bureau of Immigration and Customs Enforcement filed a detainer for removal proceedings.

Vera-Flores pleaded guilty to one count of possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A). In exchange for Vera-Flores' guilty plea, the United States agreed to a two-point reduction under the advisory Sentencing Guidelines for acceptance of responsibility and a one-point reduction for timely notifying the government. The United States further agreed not to oppose Vera-Flores' request for an outside-the-heartland downward departure under the Guidelines or his request for a below-Guidelines sentence.

At sentencing, Vera-Flores requested a downward departure based on aberrant behavior, pursuant to U.S.S.G. § 5K2.20, and for conduct outside the heartland of the Guidelines, pursuant to U.S.S.G. § 5K2.0. Vera-Flores also asked the district court to consider a sentence below the Guidelines based on his personal history and characteristics and the need to impose a sentence not greater

than necessary to accomplish the goals of 18 U.S.C. § 922(g)(5)(A). When asked for its position on the requested sentencing departures, the United States said it did not object. When asked whether it "conced[ed]" a non-Guidelines sentence would be appropriate, however, the government said it would "not concede that." The court interpreted the government's statement as "not oppos[ing] a downward departure under the guidelines but oppos[ing] imposition of a non-guidelines sentence." The court further stated its belief that there is a rebuttable presumption that a Guidelines sentence is reasonable. It placed on Vera-Flores the burden of rebutting the propriety of a Guidelines sentence.

In determining Vera-Flores' sentence, the court declined to accept either of Vera-Flores' proffered grounds for departure. It also declined to impose a below-Guidelines sentence. Based on Vera-Flores' total offense level of thirteen and his lack of criminal history points, the court calculated a Guidelines sentence of twelve to eighteen months' imprisonment. The court sentenced Vera-Flores to twelve months, followed by three years' supervised release. Vera-Flores subsequently requested, and the court imposed, a sentence of twelve months and one day to qualify Vera-Flores for good-time credit.

Vera-Flores filed a timely notice of appeal. On appeal, Vera-Flores asserts the United States breached the plea agreement by failing to concede that a below-Guidelines sentence would have been appropriate and by failing to correct the district court's misapprehension that the United States opposed a below-

Guidelines sentence. Vera-Flores further alleges the district court abused its discretion by misinterpreting the prerequisites for the aberrant behavior departure and by declining to apply the outside-the-heartland departure. Finally, Vera-Flores challenges the substantive reasonableness of his sentence and the manner in which the district court arrived at its decision to impose a within-Guidelines sentence.

Vera-Flores completed his term of incarceration during the pendency of this appeal and was removed from the United States by the Bureau of Immigration and Customs Enforcement. This court issued an order to show cause why the case should not be dismissed as moot, either because Vera-Flores' deportation rendered the appeal moot or because of the lack of a concrete possibility the district court would impose a lesser term of supervised release on remand.

In his briefing on the mootness issue, Vera-Flores argues the appeal is not moot because any errors in sentencing could be corrected on remand by a reduced term of supervised release. The United States, in response, acknowledges that a favorable appellate decision has the potential to yield a reduced term of supervised release, but argues that the record, which is devoid of any discussion about the appropriate term of supervised release, does not suggest any "concrete possibility" that a lesser supervised release term would be imposed on remand. The United States also argues that Vera-Flores has not met the burden of demonstrating that sufficient collateral consequences would arise from a

favorable decision because his deportation has rendered his supervised release term a practical nullity. In reply, Vera-Flores contends the government is only speculating as to whether there is a concrete possibility of a reduced term of supervised release on remand and asserts that, because he does not face a lifetime bar to lawful reentry into the United States, his situation is distinguishable from that of defendants whose sentencing appeals have been held moot by other courts.

## III.    Discussion

Before addressing the merits of an appeal, a court must be satisfied that it has jurisdiction to entertain the appeal. Article III of the United States Constitution imposes a strict requirement that federal court jurisdiction extends only to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. Article III requires a party seeking relief to have "suffered, or be threatened with, an actual injury traceable to the [appellee] and likely to be redressed by a favorable judicial decision [by the appeals court]." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000) (quotation omitted) (alteration in original). Where judicial relief will not remedy the appellant's injury, "the appellant can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot." *Id.*

In this circuit, under ordinary circumstances, a defendant who has served his term of imprisonment but is still serving a term of supervised release may challenge his sentence if his unexpired term of supervised release could be

reduced or eliminated by a favorable appellate ruling. *United States v. Castro-Rocha*, 323 F.3d 846, 847 n.1 (10th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzales*, 127 S.Ct. 625 (2006). A defendant in this situation satisfies the Article III case or controversy requirement because the defendant's liberty is affected by ongoing obligations to comply with supervised release conditions and restrictions. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119 (2001) (discussing limits of probationer's liberty).

This case, however, presents a different situation. Vera-Flores served his sentence and has been deported. Although legally subject to a three-year term of supervised release, Vera-Flores is presumably in Mexico. While outside the United States, Vera-Flores has no obligation to report to a probation officer and is not under the supervision or control of the United States Probation Office. In short, Vera-Flores' liberty is in no way affected by any sentencing error allegedly committed by the district court because Vera-Flores' deportation has eliminated all practical consequences associated with serving a term of supervised release.[2]

---

[2]Because Vera-Flores' claim regarding the government's breach of the plea agreement relates solely to sentencing, this court construes his claim as a challenge to the length of his sentence rather than to his conviction. Vera-Flores nowhere disputes the voluntary, knowing, and intelligent nature of his plea or asserts the plea itself is invalid. Vera-Flores' only challenge is to whether the government was obligated to clarify that it did not oppose the imposition of a below-Guidelines sentence. Furthermore, although Vera-Flores attempts in his reply brief on the mootness issue to characterize his plea bargain claim as a challenge to his conviction, he admits that the appropriate remedy would be a reduction in his term of supervised release rather than the invalidation of the plea

(continued...)

Vera-Flores does not, therefore, have an actual injury likely to be redressed by a favorable judicial decision, even assuming *arguendo* that Vera-Flores states valid claims on appeal which would be likely to result in the modification or elimination of his supervised release term on remand. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Furthermore, as in the parole-revocation context, this court cannot presume that collateral consequences arise from any alleged sentencing errors. *See Spencer*, 523 U.S. at 14 (declining to presume collateral consequences flow from allegedly improper parole revocation); *Meyers*, 200 F.3d at 722 (holding defendant failed to show sufficient collateral consequences arising from revocation of supervised release and resulting reimprisonment after term of reimprisonment had been completed). Where direct injury is absent and there is no presumption that collateral consequences arise from erroneous district court action, the appellant bears the burden of demonstrating sufficient collateral consequences to avoid dismissal for mootness. *Spencer*, 523 U.S. at 14–16; *Meyers*, 200 F.3d at 718. Vera-Flores has not met this burden. Vera-Flores

---

[2](...continued)

agreement. Under different circumstances, where, for example, the voluntariness of the plea itself is at issue, the defendant's challenge would properly be considered a challenge to the defendant's conviction and the mootness analysis would likely be different, even in a situation where the defendant has been deported. *See Spencer v. Kemna*, 523 U.S. 1, 12 (1998) (presuming continuing collateral consequences of a conviction sufficient to meet the Article III case or controversy requirement even after a defendant has completed his term of imprisonment).

asserts that the possibility he could lawfully reenter the United States at some future time distinguishes his situation from those of defendant aliens who are barred for life from lawful reentry into the United States and whose sentencing appeals have been held moot.[3] *See, e.g., United States v. DeLeon*, 444 F.3d 41, 55–56 (1st Cir. 2006); *United States v. Hernandez-Baide*, 146 F. App'x 302, 304 (10th Cir. 2005) (unpublished); *United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999). In support of this contention, Vera-Flores cites the court-imposed condition of his supervised release which requires him, in the event he lawfully reenters the United States during his three-year period of supervised release, to report to the nearest United States probation office within seventy-two hours of reentry. Although Vera-Flores does not elaborate upon the significance of this condition of his supervision, we construe the reference as an argument that, were Vera-Flores to obtain the Attorney General's permission to apply for lawful reentry during the pendency of his three-year term of supervised release and were he actually admitted during that time period, he would be forced to serve out the remainder of his supervised release term under the supervision of the United States Probation Office. Because this hypothetical scenario is, at best, "remote

_____

[3]Because he initially entered the country illegally and was removed upon completion of his term of imprisonment, Vera-Flores is subject to a ten-year bar from the date of his removal before he can apply for lawful reentry into the United States, unless he applies for and receives permission from the Attorney General to apply for readmission earlier. *See* 8 U.S.C. § 1182(a)(9)(A)(ii)(I) & (iii).

and unlikely to occur[,]" such a speculative collateral consequence is insufficient to save Vera-Flores' appeal from mootness.[4] *Spencer*, 523 U.S. at 8; *see generally* Richard D. Steel, Steel on Immigration Law § 11:35 (2d ed. 2006), *available at* WL STEEL § 11:35 (discussing factors Attorney General considers in exercising discretion to grant permission for early application for reentry, as well as procedure and fee for filing request for permission to apply).

## IV.  Conclusion

Because this court determines Vera-Flores has sustained no actual injury which this court can remedy and because Vera-Flores has failed to demonstrate the presence of collateral consequences arising from any alleged errors the government or the district court made during Vera-Flores' sentencing proceeding, this court concludes Vera-Flores' removal has rendered his appeal moot.  This appeal is, therefore, **DISMISSED**.

---

[4]Because this court concludes Vera-Flores has failed to demonstrate sufficient collateral consequences to avoid dismissal, we do not reach the argument recently relied upon by the Fifth Circuit in *United States v. Rosenbaum-Alanis*, 483 F.3d 381, 383 (5th Cir. 2007) and advanced by the United States here as an alternative justification for a mootness dismissal.  In *Rosenbaum-Alanis,* the court held the deported defendant's inability to appear in court for resentencing pursuant to Federal Rule of Criminal Procedure 43 precluded the court from affording relief.  *Id.*