# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2420

_____

United States of America

*Plaintiff - Appellee*

v.

Kenton Dayne Eagle Chasing

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: June 18, 2020
Filed: July 14, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Kenton Dayne Eagle Chasing was convicted of murder in 2002 and sentenced to 168 months in prison followed by five years of supervised release. Less than a year after he left prison, his release was revoked because he failed to follow his probation officer's instructions, drank, and drove under the influence. He served ten months and began another term of supervised release. His release was revoked again and he

received twenty months additional prison time when he absconded from supervision. Eagle Chasing's third term of supervised release did not last either—the district court[1] sentenced him to thirty more months in prison for again absconding from supervision and violating tribal law. He appeals, arguing that the district court lacked subject matter jurisdiction, that revocation under 18 U.S.C. § 3583(e)(3) is unconstitutional without a jury trial, that the district court should have recused, that there was insufficient evidence of his violations of the conditions of release, and that his sentence is procedurally and substantively unsound. We affirm.

I.

Although murder is generally a state crime, Eagle Chasing's 2002 prosecution was brought in federal court in part because it was alleged to have occurred in Indian country. *See* 18 U.S.C. § 1153. Eagle Chasing challenges the district court's jurisdiction over his original prosecution by claiming the murder occurred on land that had once been Indian country but had been ceded to a railroad company and could not provide the basis for his federal prosecution.

We cannot review the validity of an underlying conviction through a collateral attack in a supervised-release revocation proceeding. *United States v. Miller*, 557 F.3d 910, 913 (8th Cir. 2009). To evade this limitation, Eagle Chasing argues that the issue also implicates the district court's jurisdiction to revoke his supervised release. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."). We review such challenges *de novo*. *United States v. Hacker*, 450 F.3d 808, 814 (8th Cir. 2006).

Although § 1153 provided the jurisdictional basis for his original prosecution, it does not affect the district court's jurisdiction over revocation proceedings. That jurisdiction derives from 18 U.S.C. § 3583. *See United States v. Mosby*, 719 F.3d

_____

[1] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

925, 928 & n.3 (8th Cir. 2013); *Hacker*, 450 F.3d at 814 & n.4 (8th Cir. 2006); *see also*, *United States v. Mosby*, 2018 WL 3383430, at *3 (July 11, 2018) ("A district court's jurisdiction to modify, revoke, or terminate a term of supervised release therefore comes . . . from § 3583(e)."). The district court had jurisdiction under § 3583 and so we will not consider Eagle Chasing's argument that the location of the 2002 murder deprived the court of jurisdiction at his original prosecution.

II.

Eagle Chasing next argues that a revocation sentence under 18 U.S.C. § 3583(e) violates his constitutional rights to have a jury determine his guilt beyond a reasonable doubt. We review constitutional challenges to federal statutes *de novo*. *United States. v. Stephens*, 594 F.3d 1033, 1036–37 (8th Cir. 2010).

Eagle Chasing acknowledges that we have rejected similar arguments before. *See United States v. Coleman*, 404 F.3d 1103, 1104–05 (8th Cir. 2005) (per curiam); *United States v. Shurn*, 128 Fed. App'x 552, 554 (8th Cir. 2005) (per curiam) (unpublished). We did so because the Supreme Court has long recognized that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *Shurn*, 128 Fed. App'x at 554 (citing the same).

Nevertheless, Eagle Chasing suggests that the plurality opinion in *United States v. Haymond*, 139 S. Ct. 2369 (2019) undermines this precedent and signals a sea change in the law governing revocation proceedings. Eagle Chasing candidly admits *Haymond*, which dealt with proceedings under 18 U.S.C. § 3583(k), left open the constitutionality of § 3583(e)(3), but that understates it. In fact, all three opinions in *Haymond* sit somewhere on a scale between expressing doubt that the right to a jury trial is implicated by revocations under § 3583(e)(3), *see id.* at 2383–84 (Gorsuch, J.) (plurality opinion), to outright asserting it is not, *see id.* at 2386 (Breyer, J., concurring); *id.* at 2391 (Alito, J., dissenting).

There is good reason for this. Unlike a revocation under § 3583(k), revocation under §3583(e)(3) is a sanction connected to the original offense, and the statute affords the district court wide discretion to determine whether to revoke supervision and what sentence to impose. *United States v. Doka*, 955 F.3d 290, 296–97 (2d Cir. 2020); *see also United States v. Wilson*, 939 F.3d 929, 933 (8th Cir. 2019) (holding *Haymond* inapplicable to revocations under § 3583(g)). Even assuming that, in a future case, the Court follows the plurality and holds "a small set of [§ 3583(e)] cases" do "turn[] out to raise Sixth Amendment issues" when the sum of a defendant's initial and revocation sentences is a total term of imprisonment exceeding the statutory maximum for the original crime of conviction, Eagle Chasing would not be impacted because his second degree murder conviction carries a maximum sentence of life in prison. *Id.* at 2384 (plurality opinion); 18 U.S.C. § 1111(b).

"[A]s an inferior federal court 'we are not at liberty to browse through the[] tea leaves and vaticinate what future holdings the Supreme Court may (or may not) make.'" *Doka*, 955 F.3d at 298 (quoting *United States v. Gonzalez*, 949 F.3d 30, 42 (1st Cir. 2020)). Until the Supreme Court invalidates § 3583(e)(3), we must follow our precedent and hold that the revocation of Eagle Chasing's release did not violate his constitutional rights.

III.

Eagle Chasing next challenges the district court's denial of his motion requesting recusal because of alleged bias. We review for an abuse of discretion. *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006).

A judge must recuse from "any proceeding in which his impartiality might reasonably be questioned" or when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) & (b)(1). "A judge is presumed to be impartial and 'the party seeking disqualification bears the substantial burden of proving otherwise.'" *Denton*, 434 F.3d at 1111 (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)).

-4-

To meet this burden, Eagle Chasing points to three statements made by the district court. First, Eagle Chasing suggests that the court admitted to prejudging his case when it wrote, in its order denying the motion for recusal,

> Petitioner is apparently concerned about the length of the sentence he faces upon his third revocation. His concern is well placed. Defendants who continue to flaunt the orders of the Court by violating the conditions imposed upon them rightly assume that they will be subject to harsher penalties with each additional revocation.

D. Ct. Dkt. 200 at 3. Second, at the revocation hearing the court noted, although it had sentenced "way over 3,000 people" and did not remember many of those cases, it "definitely remember[ed] this one because it was so cruel and so needless." D. Ct. Dkt. 223 at 10:18–24. Finally, Eagle Chasing points to the district court's statement at an earlier revocation hearing, that Eagle Chasing "has admitted he doesn't trust the court system and maybe for a valid reason. I don't know." D. Ct. Dkt. 127 at 5:22–23.

When a defendant attempts to prove bias based on in-court conduct, that conduct must be "so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555 (emphasis added).

Eagle Chasing has not satisfied that standard. The first two statements stem from opinions formed during a prior proceeding and neither shows deep-seated antagonism toward Eagle Chasing. Further, both relate to factors the district court must consider in revoking supervised release. 18 U.S.C. § 3553(a) (listing factors including "the history and characteristics of the defendant" and the need "to promote respect for the law"). The third statement, suggesting that Eagle Chasing might have a "valid reason" for not trusting the court system also falls far short of the "substantial

burden" that Eagle Chasing carries when seeking recusal. In context, the district court was encouraging Eagle Chasing to trust the court system and telling him it was only "trying to get him off the path of self destruction." D. Ct. Dkt. 127 at 5:25–6:1.

IV.

Eagle Chasing next argues the evidence did not show that he violated the conditions of his release by failing to reside at his residential re-entry center and by eluding the police. We review a district court's decision to revoke supervised release for an abuse of discretion and review factfinding supporting that decision for clear error. *United States v. Frosch*, 758 F.3d 1012, 1014 (8th Cir. 2014).

As a condition of his supervised release, Eagle Chasing resided at Glory House, a residential re-entry center in Sioux Falls, South Dakota. He was required to notify his probation officer in advance of any change in residence, or, if that was not possible, to notify him within 72 hours of an unexpected change. Just over two months after he arrived at Glory House, Eagle Chasing kicked out the window screen in his room and absconded. Three days later, he called his probation officer from Eagle Butte, South Dakota, a town on the Cheyenne River Reservation. Eagle Chasing suggests he complied with the conditions of his release because he made the call and because he only fled from Glory House after he was stabbed by another resident. There is scant evidence in the record that any stabbing occurred and, even if it had, it would not justify Eagle Chasing kicking out his window, leaving Glory House without notifying anyone, and traveling 300 miles across the state before calling his probation officer. The district court did not clearly err in finding Eagle Chasing violated the terms of his release when he left Glory House without permission.

The second violation, for eluding the police, is trickier. A few weeks after he left Glory House, an officer of the Cheyenne River Sioux Tribe Police Department attempted to pull Eagle Chasing over after he witnessed Eagle Chasing fail to come to a complete stop at a stop sign. The officer, who was in uniform, was driving an unmarked car equipped with lights and a siren, which he activated. Despite hearing the siren Eagle Chasing continued to drive for some time before pulling over.

The tribal traffic code[2] defines eluding as "[i]ntentionally fail[ing] or refus[ing] to bring the vehicle to a stop," when given a "hand, voice, emergency light, or siren" signal by law enforcement, provided that the signaling officer is "in a vehicle appropriately marked showing it to be a police vehicle." But the officer's vehicle in this case was unmarked and so, Eagle Chasing argues, he cannot be charged with eluding. Relying on *Williams v. State*, 24 A.3d 210 (Md. Ct. Spec. App. 2011), which interpreted a similar statute, he argues that reading "appropriately marked" to include those police vehicles that are not painted with police markings but are equipped with sirens and flashing lights would reduce the marking requirement to surplusage in light of the separate signaling requirement. We disagree. Interpreting "appropriately marked" to include marked with flashing lights and sirens does not render the signaling requirement meaningless since those items are not necessary to properly signal a driver to stop. *See State v. Montano*, 423 P.3d 1, 16 (N.M. Ct. App. 2018). Rather, we think the better view is that in cases where the signal is delivered through the use of flashing lights and sirens, those elements may also serve as the markings that put the recipient on notice that the person giving the signal is a law enforcement officer. *Id.*

Even if the district court's conclusion that Eagle Chasing's conduct amounted to eluding the police was incorrect, we doubt it affected his sentence. Eagle Chasing's 30 month sentence was the maximum allowed and represented a 19-month variance above the top of his range based on his Grade C violations. The sentence was the result of the district court's normal practice of "imposing a longer sentence with each revocation," its consideration of Eagle Chasing's two prior revocations, and his lengthy history of criminal conduct, including the "cruel and needless" murder of his girlfriend. "We conclude any error was harmless, given the evidence of other supervised release violations." *United States v. Fry*, 276 Fed. App'x 547, 548 (8th Cir. 2008) (unpublished) (per curiam) (citing Fed. R. Crim. P. 52(a)).

---

[2] Eagle Chasing suggests that there was no lawfully enacted traffic code on the Cheyenne River Reservation when he was pulled over and that he therefore cannot have violated any law when he failed to heed the officer's sirens and lights. However, an officer from the Cheyenne River Sioux Tribe Police Department testified at the hearing that the provision at issue was lawfully enacted as of the date of Eagle Chasing's arrest. It was not clearly erroneous to credit that testimony.

V.

Finally, Eagle Chasing argues his sentence is both procedurally unsound and substantively unreasonable. We first assess whether the district court committed significant procedural error. *United States v. Williams*, 624 F.3d 889, 896 (8th Cir. 2010). If we find none, we review the substantive reasonableness of the sentences, applying a deferential abuse of discretion standard. *United States v. Stoner*, 795 F.3d 883, 884 (8th Cir. 2015).

Eagle Chasing alleges the district court procedurally erred when it considered facts in his presentence report to which he objected. Although it is ordinarily true that a district court commits procedural error if, after a defendant objects to facts in his presentence report, it relies on those facts in setting his sentence, *United States v. Hammer*, 3 F.3d 266, 273 (8th Cir. 1993), in this case Eagle Chasing had previously admitted to those same contested facts by failing to object to them at his previous sentencing hearings, *United States v. Menteer*, 408 F.3d 445, 446 (8th Cir. 2005) (per curiam). Prior admissions by the defendant are evidence that the district court may rely on to find that facts related in a presentence report are accurate. The district court did not procedurally err by relying on Eagle Chasing's admissions.

Eagle Chasing's claim that his sentence was substantively unreasonable also fails. His argument boils down to the assertion that the district court placed too much weight on the murder of his girlfriend. The district court appropriately considered the murder as part of its sentencing process and it was under no obligation to weigh it the way that Eagle Chasing would have preferred. *United States v. Anderson*, 618 F.3d 873, 883 (8th Cir. 2010). The record also shows that in varying upward the district court focused on Eagle Chasing's repeated failures to abide by the terms of his supervised release. Eagle Chasing's sentence was substantively reasonable.

The judgment of the district court is affirmed.

_____